UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MONTGOMERY E. WALKER,

        Plaintiff,

        v.                                      Case No. 24-cv-0736-bhl

CHARLES M. BAYNTON,
JOSEPH A. MCLEAN,
JUSTIN S. RIBAULT,
DAVID CARINAL,
EDWARD R. NEISNER, and
JIU RUSECKI,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Montgomery E. Walker, who is currently serving a state prison sentence at Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Walker's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Walker has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Walker has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $41.18. Walker's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to Walker, he was incarcerated at Dodge Correctional Institution from April 2012 until February 2020, at which time he was transferred to Racine Correctional Institution. Prior to being incarcerated, Walker wore orthopedic shoes and/or shoe inserts because his right leg is shorter than his left leg. Walker asserts that, on August 27, 2012, Defendant Dr. Charles Baynton refused to provide him with medical shoes and instead told him that insoles were available for purchase at the canteen. About a year later, Walker developed severe hip pain. He asserts that an x-ray was performed on July 26, 2013 that revealed that his femur head is deformed, but Dr. Baynton did not reveal these results to anyone. According to Walker, Dr. Baynton's failure to address this deformity led to ongoing hip pain and injury.

In February 2020, Walker was transferred to Racine Correctional Institution, at which time Defendant David Carinal discarded Walker's orthotic shoes because he thought the shoes were personal shoes. Walker asserts that he reported chronic left hip pain to Dr. Joseph McLean on March 18, 2020. McLean allegedly prescribed Tylenol and naproxen without addressing the underlying issue. More than a year later, on November 12, 2021, Walker asserts that he fell. He received orthotic shoes with a one-inch lift on March 31, 2022.

According to Walker, he informed his new provider, Dr. Justin S. Ribault that he believed the shoe lift was not the correct height and was the cause of his hip pain. He states that he was diagnosed with end stage left hip osteoarthrosis on June 16, 2022. Walker received a total left hip replacement on February 15, 2023. He states that Dr. Ribault cancelled two pain medications and ordered physical therapy to begin on February 22, 2023. Walker asserts that physical therapy was

very painful, but physical therapist Edward Neiser ignored him and forced him "to injure his leg causing it to swell and throb for days." Walker asserts that he refused to see Neiser and received offsite therapy after complaining about pain and balance issues.

Walker asserts that after the therapy was cancelled, he began to have low back and *right* hip pain. He states that he measured his legs and discovered he needed a one-and-a-half-inch lift, not a one-inch lift. Walker asserts that he notified Dr. Ribault, who scheduled an appointment with Nova Care Prosthetics. Defendant Jiu Rusecki noted that Walker's left leg length had increased by half an inch following his hip replacement. Walker explains that even though they corrected his shoe height, he continued to have hip pain. Dr. Ribault allegedly informed Walker to be patient as his body adjusted to the new shoe height. Eventually, at Walker's request, an x-ray was performed on January 31, 2024, at which time Walker learned about his right femur deformity. Walker asserts that Dr. Ribault has refused to treat the deformity.

## THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). Walker's allegations of chronic right and left hip pain are sufficient for the Court to infer that he suffered from an

4

objectively serious medical condition. But, for the reasons explained below, the Court cannot reasonably infer that Defendants were deliberately indifferent to that condition.

Walker first asserts that Dr. Baynton was deliberately indifferent when, in 2012, he refused to provide Walker with shoe insoles and instead informed him he could purchase insoles at the canteen. A review of the medical records that Walker attaches to and incorporates by reference in his complaint show that in May 2012 an order for a right shoe *insert* was placed to address the difference in Walker's leg lengths. Dkt. No. 1-1 at 6. Months later, on August 27, 2012, Walker requested that Dr. Baynton provide him with Velcro shoes to wear at work. Dkt. No. 1-1 at 9. The medical records reflect that Dr. Baynton evaluated Walker's feet and determined an order for different footwear was not warranted. He also advised Walker how to relieve his foot pain, including but not limited to informing him he could purchase insoles at the canteen. *Id.* Walker may have preferred special shoes or insoles for additional comfort, but inmates are not entitled to their preferred treatment. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Regardless, even if Walker's allegations stated a deliberate indifference claim, the claim would be barred by the applicable statute of limitations because Walker raised it more than six years after the alleged violation. *See Howard v. Ashworth*, No. 20-cv-1850-pp, 2022 WL 1810715 at *6 (E.D. Wis. June 2, 2022) (citing Wis. Stat. §893.53).

Walker next asserts that Dr. Baynton was deliberately indifferent to his *right* hip condition when he failed to disclose the results of a 2012 x-ray that showed Walker has a femoral head deformity. Walker's allegations are contradicted by his medical records. The Department of Corrections maintains a running "Problem List" for each inmate, and Walker's list contains a July 26, 2013 entry recording a hip x-ray showing "femoral head deformed" with right hip pain. Dkt. No. 1-1 at 11. Therefore, the records Walker attaches to his complaint confirm that Dr. Baynton

5

did not, as Walker alleges, conceal the results of this x-ray. But, even if he had, Walker fails to explain how he was harmed by this alleged omission. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2001) ("In order to succeed in a §1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages."). Everyone, including Walker, knew that Walker's right leg was shorter than his left leg. The x-ray merely revealed *why* his legs are different lengths; Walker does not allege facts that would allow an inference that this information would have impacted how the difference should be addressed. As was the case before and during Walker's incarceration, the difference in his leg lengths was addressed with orthotic shoes and/or shoe inserts. So, while it may have been startling for Walker to learn that his legs are different lengths because his femur is deformed, there is no basis to conclude that the information had an impact on the treatment for that condition. Given that Walker was not harmed by Dr. Baynton's alleged omission, he fails to state a claim against him.

Walker also fails to state a claim against Carinal based on allegations that, when Walker was transferred to a new institution, Carinal threw away his medical shoes "because he believed that they were personal shoes." Even if accurate, the mere fact that Carinal made a mistake is unfortunate but not actionable under §1983. It has long been held that "[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of necessary pain." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Given Walker's concession that Carinal did not know the shoes were prescribed to address a medical condition, the Court cannot reasonably infer that he was deliberately indifferent to Walker's medical needs. Further, it also appears that, even if Walker had stated a claim against Carinal, it too would be barred by the applicable statute of limitations.

Nor does Walker state a claim against Dr. McLean based on allegations that, although he provided Tylenol and naproxen to Walker in response to his complaints of pain, he failed to address the underlying issue. Walker does not identify "the underlying issue" nor is it clear how McLean should have addressed it. According to Walker's medical records, Dr. McLean met with Walker on March 25, 2020 to discuss multiple complaints, including hip pain "that waxes and wanes but never goes away." The record reflects that Walker received acetaminophen and naproxen to take as needed for headaches, and, in response to his complaints of pain, he and Dr. McLean discussed amitriptyline, which Walker decided to discontinue. Walker and Dr. McLean also discussed duloxetine, but it is unclear whether Walker opted to pursue this option. Dkt. No. 1-1 at 27. Although Walker may not have received the treatment he wanted, nothing suggests that Dr. McLean was deliberately indifferent to Walker's pain. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996) (holding that mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient to support a deliberate indifference claim). Walker therefore fails to state a claim against Dr. McLean.

Next, Walker's allegations against physical therapist Neisner are too vague to state a claim. Walker alleges that, after his hip replacement, Neisner required him to do painful exercises that resulted in swelling and throbbing in his left hip. But "[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Walker had just received a hip replacement. It goes without saying that exercises to restore mobility in the joint following major surgery would be accompanied by some pain. Thus, the mere fact that the exercises were painful is not sufficient on its own for the Court to reasonably infer that Neisner was deliberately indifferent to Walker's condition. While Walker may have preferred less painful treatment,

7

"[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Having pain during physical therapy sessions after major hip surgery is not an extreme situation.

Walker also fails to state a claim against Rusecki, who worked for an offsite orthopedic clinic and confirmed that Walker's left leg length had increased following his hip surgery. Rusecki took impressions of Walker's feet in response to his complaints of foot arch pain and ordered the correct sized shoe lift along with new orthopedic shoes. Dkt. No. 1-1 at 59. Given that Rusecki addressed all of Walker's concerns, her actions do not suggest that she was deliberately indifferent to his condition.

Finally, Walker fails to state a claim against Dr. Ribault, Walker's most recent (and perhaps current) advanced care provider. It is not entirely clear why Walker believes Dr. Ribault was deliberately indifferent to his hip condition. Walker first alleges that, after he fell in June 2022, Dr. Ribault ignored his complaints that his shoe lift was the incorrect height. But it was not until after Walker's hip replacement in February 2023, when Walker's left leg length increased, that a higher shoe lift was needed. Walker's medical records reflect that, when Walker complained of continued pain following his hip replacement, Dr. Ribault referred him to an orthopedic clinic where a new lift and new shoes were ordered and impressions of Walker's feet were taken to address his complaints of arch pain. Walker also alleges that Dr. Ribault cancelled two pain medications immediately following his hip replacement. The medical records reflect that Dr. Ribault did not allow Walker to continue with valium and oxycodone once he returned from the hospital. Dkt. No. 1-1 at 56-57. But these are highly controlled medications that are especially dangerous and susceptible to abuse in the prison environment. In any event, the medical records show that, although Walker was not permitted to continue with these particular medications, he

was prescribed many other medications to address his post-surgery pain. The mere fact that Walker was not given the pain medication of his choice, does not support a claim that Dr. Ribault was deliberately indifferent to his pain. Finally, Walker alleges that Dr. Ribault has failed to address his femoral head deformity, but, again, this allegation is undermined by the medical records that demonstrate Walker has consistently been prescribed shoe lifts and orthopedic shoes to address the difference in leg lengths due to the deformity.

Indeed, Walker's medical records reflect that Dr. Ribault made numerous efforts to respond to Walker's hip issues, including ordering an extra pillow and a low bunk restriction, prescribing various pain medications including Tylenol, Motrin, tramadol, and meloxicam, referring Walker to an offsite clinic for new inserts/medical shoes and to a specialist for a left hip replacement, and referring him to onsite and offsite physical therapy. Considering the totality of the care Walker received, the Court cannot reasonably infer that Dr. Ribault was deliberately indifferent to Walker's hip condition. *See Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). Accordingly, without more specific allegations supporting an inference of deliberate indifference, Walker fails to state a claim against Dr. Ribault.

The Seventh Circuit has explained that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Walker believes he can cure the deficiencies identified in this decision, he may file an amended complaint by **September 27, 2024**. He is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court

will dismiss this action based on Walker's failure to state a claim in the original complaint. If Walker does not believe he can cure the deficiencies identified in this decision, he does not have to do anything further. The Court will enclose an amended complaint form along with this decision.

**IT IS THEREFORE ORDERED** that Walker's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **September 27, 2024**, Walker may file an amended complaint curing the defects in the original complaint as described in this decision. If Walker does not believe he can cure the defects, he does not have to take any further action.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Walker a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Walker shall collect from his institution trust account the $308.82 balance of the filing fee by collecting monthly payments from Walker's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Walker is transferred to another institution, the transferring institution shall forward a copy of this Order along with Walker's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Walker is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Walker is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on August 30, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
